UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TINA BONNEAU

    Plaintiff

v.

STATE UNIVERSITY OF NEW YORK AT BROCKPORT,
PROF. DEBRA FISHER, PROF. MELISSA BROWN,
PROF. PHYLLIS KLODA, KAREN LOGSDON, and
ASSISTANT DEAN VIRGINIA BACHELER, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES,

    Defendants

_____

Dkt. no.

COMPLAINT

JURY TRIAL
DEMANDED

11-CV 6273 CJS

## JURISDICTION

1. This is an action brought for redress of discriminatory conduct against a branch of the

   State University of New York, under Titles II and III of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 794 et seq., and against the individual government actor-employees of the State University of New York for redress under the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Jurisdiction is based on 28 U.S.C. § 1343. This Court has jurisdiction over state law claims based on the same transactions and occurrences.

## VENUE

2. Venue is laid in the Western District of New York, where the acts complained of

occurred and where the parties reside.

## PARTIES

3. At all times mentioned herein, Plaintiff, TINA BONNEAU, was a citizen of the United States residing in New York. At all times mentioned herein she was a person with disabilities within the meaning of the Americans with Disabilities Act, the Rehabilitation Act, and the New York State Human Rights Law.

4. Defendant State University of New York at Brockport ("SUNY-Brockport") was at all times mentioned herein a branch of the State University of New York. At all times mentioned herein it was a recipient of federal funds.

5. At all times mentioned herein, Defendants DEBRA FISHER, MELISSA BROWN, and PHYLLIS KLODA were professors employed by Defendant SUNY-BROCKPORT. At all times mentioned herein they acted within the scope of their employment, and as government actors, and as agents of Defendant SUNY-BROCKPORT.

6. At all times mentioned herein, Defendants VIRGINIA BACHELER and KAREN LOGSDON were administrators employed by Defendant SUNY-BROCKPORT. At all times mentioned herein they acted within the scope of their employment, and as government actors, and as agents of Defendant SUNY-BROCKPORT.

## FACTS

7. In the Fall of 2007, Plaintiff, who had been a student at Defendant SUNY-BROCKPORT, was readmitted and resumed her studies there as a Psychology major.

8. Prior to the Spring semester, Plaintiff added a second major in Studio Art with a

concentration in Painting.

9.

.In the Spring semester, beginning in January, 2008, Plaintiff notified the SUNY-BROCKPORT Office for Students with Disabilities ("OSD") that she was disabled, provided medical documentation, and was granted accommodations.

10. Plaintiff requested, and was granted, the accommodations of extended testing times,

permission to take short breaks during classes and assistance with getting any notes missed during those breaks.

11. At the start of each semester, Plaintiff was required to supply each professor, for whose

class she wished to make use of those accommodations, with a letter supplied by the OSD that states that she was a student with a disability, and the professor was required to sign it in acknowledgment that they knew which accommodations they must provide at Plaintiff's request.

12. In Spring 2008, her first semester in the Art Department, when she presented her

13. accommodation letter to Associate Art Professor Defendant DEBRA FISHER, her

professor for Drawing I, Defendant FISHER inquired as to the specific nature of the disability. Plaintiff informed her that she was not required to share that with the professor. However; she did disclose that she has Post-Traumatic Stress Disorder.

14. Plaintiff made clear to Defendant FISHER that the fact of Plaintiff's PTSD was to

be treated as confidential.

15. Plaintiff did not share the nature of her disability or her diagnosis with any other professors or administrators in the Art Department.

16. In Spring 2008, Plaintiff, who had become personally friendly with Defendant Fisher, privately showed the Professor FISHER some of her pre-art school artwork which was hosted on Plaintiff's anonymous personal weblog ("blog.").

17. Plaintiff did not share the blog with students at that time nor at any time after.

18. Defendant FISHER became a regular reader of the blog and learned of many very personal facts about Plaintiff's mental health history, including childhood traumas and the traumatic, disabling experiences with psychiatry that destroyed her health and nearly ended her life.

19. In Spring 2008, Plaintiff witnessed a very serious argument in Drawing I that occurred between Defendant FISHER and a student who subsequently chose to drop the class. Defendant FISHER screamed at him to shut up and engaged in heated dialogue in front of the entire class.

20. In Fall 2008, her second semester in the Art Department, Plaintiff was enrolled in another of Defendant FISHER's classes, Printmaking I.

21. During the Fall 2008 semester, Defendant FISHER was verbally abusive to a student,

and that student withdrew from the class right before mid-term.

22. That same student was often the subject of disparagement by Defendant FISHER in her private e-mails to Plaintiff.

23. During the Fall 2008 semester, Defendant FISHER shared personal information with Plaintiff, by e-mail, including several students' grades, behaviors and other information that is protected by FERPA.

24.

Plaintiff advised SUNY-BROCKPORT administrators of these FERPA violations in Spring 2010. She was challenged to "prove it".

25. During the Fall 2008 semester, Defendant FISHER got into another serious classroom

26. altercation with another student, this time in her Printmaking II class. That student was

referred to the Student Behavioral Consultant Team ("SBCT").

27. During the Fall 2008 semester, Defendant FISHER reduced a young Asian student in

Print I class to tears by harshly stating that her idea for her final woodcut about the given

topic "Identity" was cliche, asking the student, "Don't you know anything about your heritage?!" The student replied that she did not. She was adopted.

28. In November 2008, Psychology Department Chairperson, Defendant DR. MELISSA BROWN, made an SBCT referral on Plaintiff after Plaintiff contacted her by e-mail for assistance with a Psychology Department professor who, against college policy, refused to grade a paper because she did not like the "tone". This is the first time the SBCT was used to against Plaintiff to deflect responsibility of a professor at Defendant SUNY-BROCKPORT to adhere to college policy as well as the law.

29. On or about November 21, 2008, Plaintiff wrote on her Blog about incidents on November 11 and November 20, in which Defendant FISHER had not respected her personal boundaries, questioning Plaintiff's focus and goals for her artwork and education, leading Plaintiff to decide to end her personal friendship with Defendant FISHER. Plaintiff also wrote on her blog about the incidents of Defendant FISHER's inappropriate dealing with students in the classroom. Defendant Fisher showed up the following morning at the blog to read, and returned to read.

30. Defendant Fisher returned to the blog obsessively to read that post, and she began to follow Plaintiff's friends blogs. This went on until Plaintiff saved the blog to a file and deleted it from the wordpress URL.

31. Defendant Fisher was mostly uncommunicative with Plaintiff in class, and was

extremely hostile to Plaintiff when she was required to respond to needed information.

32. Defendant Fisher is a highly disliked professor by many students, and her classroom was already tense due to her behavior. Plaintiff influenced no one and turned no one against her.

33. After agreeing to have Plaintiff leave her final portfolio for grading in a secure location,

34. Defendant Fisher reneged on the agreement. There had been numerous thefts in the department that semester and the previous semester.

35. Plaintiff contacted Defendant Art Department Chairperson Phyllis Kloda on December 1, 2008 to ask for assistance in the matter, and arranged to drop off the portfolio to Defendant Fisher on the day she would be grading it, so that it did not remain in an open unattended studio for more than a week before Defendant Fisher graded it.

36. Plaintiff had done larger than required editions and also turned in three non-required editions done on her own time. All of Plaintiff's work was completed on time.

37. The drop-off date for that portfolio was for the morning of December 8, 2008, and pick-up was to be around 2 pm in the Print studio.

38. Plaintiff dropped off her graded portfolio at the designated time, and picked it up at the

designated time.

39. When Plaintiff went to retrieve her graded portfolio, Defendant Fisher was in the classroom

still grading folios.

40. The studio technician came into the classroom, and Debra Fisher asked to go out into the

hallway to talk.  In the hallway, Defendant Fisher began to harass Plaintiff about her

41. treatment choices, saying: "There MUST BE some kind of medication you can take!" "That

art therapist is not helping you." "Therapy is not helping you." She continued with harassing comments about Plaintiff's treatment choices and insisted that this was the reason Plaintiff chose to end the friendship and possibly leave the Department.

42. Defendant FISHER continued to invade Plaintiff's privacy with google searches for

Plaintiff, following Plaintiff's friends' blogs from around the country.

43. Plaintiff contacted Defendant FISHER by e-mail in December 2008, with a warning that

Plaintiff would take legal action if Defendant FISHER didn't cease, and Defendant FISHER apologized, but then continued.

44. When Plaintiff returned to Defendant FISHER's classroom to take Print II in Spring 2010,

events took place early in the semester that led Plaintiff to disclose Defendant FISHER's

previous misconduct to Defendant PHYLLIS KLODA.

45. Defendant KLODA proceeded to question Plaintiff about her disability, her treatment choices, and made statements to Plaintiff during a total of three hours of harassment and threats on February 2, 2010, that caused Plaintiff extreme emotional distress. Defendant KLODA made statements that included knowledge and misinformation that could only have come from Defendant FISHER.

46.

Defendant KLODA threatened to report Plaintiff to the SBCT if Plaintiff refused to drop Printmaking and take something else.

47. Defendant KLODA went on to make that referral two days later on February 4, 2010, asking

the administrators if she could have Plaintiff administratively removed based on a list of falsified and fabricated events she had compiled.

48. Defendant KLODA specifically stated in that request to the SBCT that she had concerns

that Plaintiff was in therapy but not medicated.

49. On February 23, 2010, Plaintiff received an email request from Defendant KAREN

LOGSDON, Assistant to the Vice president of Student Affairs and Chairperson of the Student Behavioral Consultant Team, (SBCT) for a meeting with the SBCT saying that Plaintiff was reported as a "Student of Concern".

50. Defendant LOGSDON repeatedly refused to disclose to Plaintiff the grounds for the referral

or the behaviors alleged.  Plaintiff's repeated requests to Defendant LOGSDON and requests made on Plaintiff's behalf by Plaintiff's therapist went  unanswered despite the fact that Plaintiff informed Defendant LOGSDON her that Plaintiff did not feel safe to return to school or to have a meeting without knowing what was behind the referral.

51.

Plaintiff's fear of what was behind the referral was due to the 2008 harassment by Defendant FISHER and the harassment by Defendant KLODA, in which Defendant FISHER's harassment

clearly played a role due to the nature of Defendant KLODA's questions and threats in 2010.

52. Both Plaintiff and Plaintiff's therapist spoke with Defendant LOGSDON on March 3, 2010.

Defendant LOGSDON refused to disclose the nature of the allegations which were the basis of the SBCT referral

53. Plaintiff requested, as a reasonable modification of the SBCT program, that the meeting take

place at a  location elsewhere on campus, with the therapist present, rather than at the Health Center Counseling Office, on March 3, 2010 .  Defendant LOGSDON spoke to Plaintiff's therapist again on March 4, 2010 and refused the requested accommodations for the SBCT

meeting.

54. Defendant LOGSDON stated that she could not help Plaintiff with the fact that Plaintiff was now far behind on her classwork and suggested Plaintiff contact the OSD for "advocacy".

55. OSD is not set up to provide "advocacy" of this sort. The problem Plaintiff was encountering of being behind in class work was directly due to the refusal of Defendant LOGSDON acting on behalf of Defendant SUNY-Brockport to accommodate Plaintiff's request for an alternate meeting site on campus and her therapist's presence, and to disclose the nature of the allegations, so that Plaintiff could attempt to resolve the issues being raised concerning her alleged behavior and get back to her class work.

56. On March 9, 2010, Defendant FISHER sent an e-mail to Defendants KLODA and BACHELER in which Defendant FISHER alleged that a student told her she knew Plaintiff was "crazy" and might go after Defendant FISHER with a gun. In the e-mail, Defendant FISHER also called Plaintiff a "ticking-time bomb" and stated that Plaintiff needed to be kept off campus and out of her classroom.

57. Plaintiff met with Defendant BACHELER on March 11, 2010. Defendant BACHELER insisted on keeping the door open during the meeting, violating Plaintiff's privacy and denying her ordinary civility, much less a reasonable accommodation. During the meeting, Defendant

BACHELER raised her voice to Plaintiff during the discussion, refused to disclose the grounds for the referral to SBCT, and refused to assist Plaintiff with extending times to allow her to make up the missed work without her attendance grades and late work affecting Plaintiff's overall grades.

58. At the meeting, Defendant BACHELER told Plaintiff that she would not be allowed to pass Printmaking no matter what, and that her Painting II grade would be affected.

59. The time away from the college also meant that Plaintiff had missed a language exam she would need to graduate.

60. On March 11, 2010, after the meeting with Defendant BACHELER , Plaintiff went to the Art Department building, to speak with another professor. Defendant FISHER closed the door to her class room and began to discuss Plaintiff with the students in her class, implying that Plaintiff 's presence was a threat to safety, resulting in the suggestion by one student that Defendant FISHER call the armed campus police.

61. At that point, Plaintiff left the building terrified and returned home to contact Defendant BACHELER by e-mail to notify her of what occurred. Defendant BACHELER did nothing about it. Plaintiff could not feel safe returning to her classes after that incident.

62. Plaintiff sent a request to Defendant LOGSDON on March 11, 2010 to schedule the SBCT meeting and to learn the nature of the allegations, but Defendant LOGSDON was still insisting that the meeting meet take place at the campus health center counseling office. Plaintiff reminded Defendant LOGSDON she would need to provide Plaintiff with the information Plaintiff

had requested, and Defendant LOGSDON again refused to agree to do so. She did not respond to set up the meeting until after Spring break, on or about March 24, 2010. Plaintiff then reminded Defendant LOGSDON of the necessary accommodations. There was no response from Defendant LOGSDON.

63. On the afternoon of March 24, 2010, Plaintiff notified Defendant SUNY-BROCKPORT that she would be filing a complaint charging disability discrimination with the New York State Division of Human Rights ("SDHR").

64. Plaintiff filed an administrative complaint with the SDHR on March 29, 2010, complaining of disability discrimination at SUNY-.BROCKPORT.

65. On or about April 1, 2010, Defendants KLODA and FISHER sought to lodge student misconduct charges against Plaintiff.

66. The conduct referral was sent to Plaintiff with the other documents she received from Defendant SUNY-BROCKPORT as its answer rebuttal to her administrative complaint through the SDHR on May 1, 2010. It was included as "evidence". The documents Plaintiff received included all of the allegations, which Plaintiff learned of for the very first time from the SDHR documents.

67. Plaintiff was never notified of any adjudication of these allegations of misconduct by Defendant SUNY-BROCKPORT.

68. One of the documents, an e-mail from Defendant FISHER to Defendants KLODA and BACHELER, dated March 9, 2010 described Plaintiff as "crazy", a" ticking-time bomb", and stated that Plaintiff should be kept out of school. It also alleged that a student told her Plaintiff might come after Defendant FISHER with a gun.

69. There are college policies that outline how to document disruptive events and how to proceed with disruptive students. Those policies were never followed, because the things Plaintiff was accused of doing did not take place.

## AS A FIRST CAUSE OF ACTION

70. Plaintiff repeats as if stated here in full ¶¶ 1-69 of this Complaint.

71. Defendant SUNY-BROCKPORT is a public entity within the meaning of the Americans with Disabilities Act, Title II, 42 U.S.C. § 12131(1).

72. Defendant SUNY-BROCKPORT through its agents, denied Plaintiff a reasonable modification of its programs to accommodate her known disabilities, and treated her less favorably based upon her disabilities, in violation of the Americans with Disabilities Act.

## AS A SECOND CAUSE OF ACTION

73. Plaintiff repeats as if stated here in full ¶¶ 1-72 of this Complaint.

74. At all times mentioned herein, Defendant SUNY-BROCKPORT has been a recipient of federal funds.

75. Defendant SUNY-BROCKPORT through its agents, denied Plaintiff a reasonable

modification

of its programs to accommodate her known disabilities, and treated her less favorably based upon her disabilities, in violation of the Rehabilitation Act of 1973, 29 U.S..C. § 621 et seq.

## AS A THIRD CAUSE OF ACTION

76. Plaintiff repeats as if stated here in full ¶¶ 1-75 of this Complaint.

77. Defendant SUNY-BROCKPORT retaliated against Plaintiff for her opposition to disability discrimination, by treating her with hostility and denying her equal opportunity to complete her course work, and by referring her to the SBCT, and for her use of the New York State administrative complaint process by filing a complaint with the SDHR, by initiating a disciplinary proceeding against her, in violation of anti-retaliation provisions of the Americans with Disabilities Act and the Rehabilitation Act.

## AS A FOURTH CAUSE OF ACTION

78. Plaintiff repeats as if stated here in full ¶¶ 1-77 of this Complaint.

79. Defendants discriminated against Plaintiff and aided and abetted discrimination against Plaintiff based upon her disability, and in retaliation for her opposition to discrimination and filing of an administrative complaint with the SDHR, in violation of the New York State Human Rights Law, Executive Law § 290, et seq.

80. To the extent that Plaintiff's discriminatory treatment was considered by the New York State Division of Human Rights, and the complaint dismissed, the SDHR decision was arbitrary and capricious and contrary to law.

81. Numerous aspects of Plaintiff's discriminatory treatment by Defendants, including but not limited to the retaliatory conduct of Defendants in relation to Plaintiff's filing of her complaint with

the SDHR, were not considered by the SDHR, and should be considered *de novo* by the finder of fact.

## AS A FIFTH CAUSE OF ACTION

82. Plaintiff repeats as if stated here in full ¶¶ 1-81 of this Complaint.

83. Defendants, acting under color of law, in censuring Plaintiff for her publication of her weblog
matters of public concern including the manner in which Defendant FISHER mistreated students violated Plaintiff's right to free speech guaranteed by the First and Fourteenth Amendments against interference by government actors,.

84. Defendants' actions violated Plaintiff's rights under color of law, for which redress is available
under 42 U.S.C. § 1983.

## AS A SIXTH CAUSE OF ACTION

85. Plaintiff repeats as if stated here in full ¶¶ 1-84 of this Complaint.

86. Defendants charged Plaintiff with misconduct and denied Plaintiff an opportunity to defend against disciplinary charges, and penalized her for not participating in the SBCT process while not disclosing what alleged misconduct formed the basis of Plaintiff's referral to SBCT, and denied Plaintiff an opportunity to participate in the SBCT process in a manner that was meaningful in light of her disabilities.

87. Defendants' acts and omissions denied Plaintiff's right to procedural due process, under color

of law, for which redress is available under 42 U.S.C. § 1983.

AS A SEVENTH CAUSE OF ACTION

88. Plaintiff repeats as if stated here in full ¶¶ 1-87 of this Complaint.

89. Defendant FISHER's actions causing injury to Plaintiff's reputation, and the effective denial of Plaintiff's ability to continue with her studies at Defendant SUNY-BROCKPORT, ratified by and participated in by the other Defendants, constituted a deprivation of Plaintiff's interest in her reputation, constituting a violation of due process under the "defamation plus" standard.

90. Defendants' acts and omissions denied Plaintiff's right to procedural due process, under color

of law, for which redress is available under 42 U.S.C. § 1983.

Wherefore Plaintiff respectfully requests an injunction requiring Defendant SUNY-BROCKPORT and the individual Defendants in their official capacities to 1) take all necessary steps to insure that Plaintiff is able to complete her studies at SUNY-BROCKPORT without being subject to discriminatory or retaliatory treatment, and to 2) purge Plaintiff's academic, disciplinary, and other SUNY-BROCKPORT records of all grades and references which are affected by Defendants' discriminatory and/or retaliatory conduct, and 3) an award of compensatory damages against Defendants jointly and severally for discriminatory and retaliatory conduct, and 4) an award of compensatory damages against the Defendants jointly and severally and punitive damages against individual defendants for violations of Plaintiff's civil rights under 42 U.S.C. § 1983, together with reasonable attorney's fees and costs, and statutory attorney's fees under the New York State Equal Access to Justice Act, and such further, other and different relief as this Court deems just in the premises.

Yours, etc.

Tina Bonneau, pro se

184-1 Meadow Farm S.

North Chili, NY 14514

Telephone no.

(585) 594-0250

## JURY DEMAND

Tina Bonneau, Plaintiff, pro se, hereby demands a trial by jury of all issues triable by jury.

6/1/11

Tina Bonneau

Aaron David Frishberg, Esq. declares that I have assisted Plaintiff in the drafting of this Complaint but do not at this time represent her.