**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
———————————————————————

TINA BONNEAU,

                                        Plaintiff,

                -vs-

STATE UNIVERSITY OF NEW YORK AT BROCKPORT,
PROF. DEBRA FISHER, PROF. MELISSA BROWN,
PROF. PHYLLIS KLODA, KAREN LOGSDON, AND
ASS'T DEAN VIRGINIA BACHELOR, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES,

                                        Defendants.
———————————————————————

**MEMORANDUM OF LAW**

**11-CV-6273CJS**

### PRELIMINARY STATEMENT

Defendants State University of New York at Brockport, Prof. Debra Fisher, Prof. Melissa Brown, Prof. Phyllis Kloda, Karen Logsdon, and Ass't Dean Virginia Bachelor submit this Memorandum of Law in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). The complaint asserts seven (7) claims against the various defendants, to wit:

(a) American with Disabilities Act ("ADA"), Title II claim against SUNY Brockport;

(b) Rehabilitation Act claim against SUNY Brockport;

(c) Retaliation claim against SUNY Brockport;

(d) New York State Human Rights Law claim against all defendants;

(e) 1st Amendment censure claim against all defendants;

(f) Procedural Due Process Violation claim against all defendants; and

(g) Defamation Stigma Plus Claim against all defendants.

All claims fail to state claims upon which relief can be granted as a matter of law and the court lacks jurisdiction over the New York Human Rights Law claim.

1

## FACTS[1]

During the Fall 2007 the plaintiff was a Psychology Major (see Docket #1: Complaint par. 7).  In January 2008 the Plaintiff notified SUNY Brockport Office for Students with Disabilities ("OSD") about being disabled, provided medical documentation and was granted an accommodation (see Complaint par. 9).

During the Spring 2008 the plaintiff disclosed to Art Professor Fisher about her Post Traumatic Stress Disorder (see Complaint par. 12-13).  The plaintiff became friendly with Professor Fisher (see Complaint par. 16).

Subsequently, the plaintiff observed Professor Fisher argue with a student (see Complaint par. 19).  In the Fall 2008 the P observed Professor Fisher be verbally abusive to a student (see Complaint par. 21).  The plaintiff obtained several students' personal information from Professor Fisher in violation of the Federal Education Rights and Privacy Act ("FERPA") (see Complaint par. 23).  She observed Professor Fischer engage in an altercation with a student (see Complaint par. 25-26).  Plaintiff also observed Professor Fisher reduce a student (see Complaint par. 27).

In November 2008 the plaintiff was referred to Student Behavioral Consultant Team ("SBCT") by Psychology Professor Brown because of the "tone" of a paper she submitted (see Complaint par. 28).

On November 21, 2008 the plaintiff  published an internet blog about Professor Fisher (see Complaint par. 29).  Several days later, on December 1, 2008 the plaintiff contacted Professor Kloda to arrange an assignment drop off (see Complaint par. 35).  On December 8, 2008 the plaintiff dropped off and assignment and Professor Fisher inquired about plaintiff's

---

[1]For purposes of this Motion to Dismiss, the facts are as alleged in Plaintiffs' Complaint (Docket No. 1).  The Defendant reserves their right to offer their own version of facts should this matter continue beyond this Motion to Dismiss.  The Defendant preserves its right to raise affirmative defenses such as but not limited to statute of limitations, failure to exhaust administrative remedies, lack of personal jurisdiction, etc.

treatment (see Complaint par. 37-41).  In December 2008 the P contacted Professor Fisher to tell her to stop internet searches about the plaintiff (see Complaint par. 42-43).

In the Spring 2010 the plaintiff complained to SUNY Brockport administrators about aforementioned FERPA violations (see Complaint par. 24, 44).  The plaintiff again matriculated in Professor Fisher's course (see Complaint par. 44).

On February 2, 2010  the plaintiff met with Professor Kloda for three hours that caused extreme emotional distress (see Complaint par. 45).  Two days later on February 4, 2010 the plaintiff was referred to the Student Behavioral Consultant Team ("SBCT") by Professor Kloda (see Complaint par. 47).

On February 23, 2010 the plaintiff was contacted by SBCT representative Logsdon with report of "student of concern" (see Complaint par. 49).  March 3, 2010 the Plaintiff and her therapist requested a change of location to meet with SBCT representative Logsdon (see Complaint par. 53).  The nest day, March 4, 2010 the plaintiff and therapist were told that the meeting was to be held at the Health Center Counseling Office (see Complaint par. 53).

On March 9, 2010 Professor Fisher communicates a safety concern (i.e., "ticking time bomb" and "student told her Plaintiff might come after Defendants Fisher with a gun) about the plaintiff to Professor Kloda and Assistant Dean Bacheler (see Complaint par. 56, 68).  Two days later, on March 11, 2010  the plaintiff met with Assistant Dean Bacheler in an open door office (see Complaint par. 57).  The plaintiff left the meeting and proceeded to the Art Department Building wherein she sees Professor Fisher (see Complaint par. 60).  The plaintiff left the Art Department Building terrified, went home and emailed Assistant Dean Bacheler about the day's events (see Complaint par. 61).  Also, the plaintiff emailed SBCT representative Logdon to schedule a meeting at different location than the Health Center Counseling Center (see Complaint par. 62).

A couple weeks later, on March 24, 2010 the plaintiff notified SUNY Brockport that she would be filing a NYSDHR charge of discrimination (see Complaint par. 63). On March 29, 2010 the plaintiff filed a NYSDHR charge of discrimination (see Complaint par. 64).

April 1, 2010 Professors Kloda and Fisher lodged a student misconduct charge against plaintiff (see Complaint par. 65). A month later on May 1, 2010 the plaintiff received SUNY Brockport's response to her NYSDHR charge of discrimination (see Complaint par. 66).

Based on the foregoing, the defendants now moves to dismiss the complaint as a matter of law.

## STANDARD

When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a court must "accept as true all material factual allegations in the complaint." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Drakos, 140 F.3d at 129 (citing Norton v. Larney, 266 U.S. 511, 515, 69 L. Ed. 413, 45 S. Ct. 145 (1925)). When determining whether subject matter jurisdiction exists, a court may properly refer to evidence beyond the pleadings to resolve disputed jurisdictional facts. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "Thus, the standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under FED. R. CIV. P. 56(e)." Serrano v. 900 5th Avenue Corp., 4 F. Supp. 2d 315, 316 (S.D.N.Y. 1998). Therefore, plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Ceja v. Cook County Forest Preserve Dist., 2010 WL 680963, 1 (N.D.Ill.) (N.D.Ill.,2010), citing Ashcroft v.

Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (U.S.2009) (stating that the tenet

is "inapplicable to legal conclusions").  To defeat a Rule 12(b)(6) motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." Iqbal, 129 S.Ct. at 1949 (internal quotations omitted) (quoting in part Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  The

Supreme Court has stated that the "plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 556).  A complaint that contains factual

allegations that are "merely consistent with a defendant's liability ... stops short of the line

between possibility and plausibility of entitlement to relief." Iqbal, 129 S.Ct. at 1949 (internal

quotations omitted).

Here, the plaintiff makes conclusory allegations of discrimination and retaliation without

any factual predicate.

**ARGUMENT**

### POINT I  SUNY BROCKPORT IS IMMUNE FROM ADA TITLE II CLAIM (1ST CAUSE OF ACTION).

"In Press [388 F.Supp.2d 127 (E.D.N.Y. 2005)], an undergraduate student claimed that

the university had violated the ADA by discriminating against him based on the fact that he had

dyslexia and dysgraphia. The court dismissed the case. Press, 388 F.Supp.2d at 129. The court

applied the proportionality and congruence test, carefully comparing the facts before it to those

in Lane. The court recognized the importance of education and the history of discrimination

against the disabled in obtaining an education but nonetheless held that Title II was not a

congruent and proportionate response to disability-based discrimination in the post-secondary

education context. Id. at 133-34. Specifically, the court concluded that because the disabled are

not a suspect class and education is not a fundamental right, Congress could not use its powers

under section five of the Fourteenth Amendment to abrogate state sovereign immunity to protect

the rights of disabled students at state colleges and universities. Id. at 134-35." Doe v. Board of

Trustees of University of Illinois, 429 F.Supp.2d 930, 938 (N.D.Ill.,2006).

Wherefore, SUNY Brockport respectfully submits that it is entitled to sovereign

immunity and the plaintiff's ADA claim should be dismissed as a matter of law.

### POINT II:  PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (1ST, 2ND AND 3RD CAUSES OF ACTION)

The Second Circuit Court of Appeals dismissed similar claims pursuant to ADA Title II

and Rehabilitation Act by a college student against a private college in Tylicki v. St. Onge, 297

Fed.Appx. 65, 66-67, 2008 WL 4726328, 1 (C.A.2 (N.Y. (C.A.2 (N.Y.),2008).  The Court stated:

> Claims under Title II of the ADA and section 504 of the Rehabilitation Act are treated identically. Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir.2003). To establish a prima facie violation of the ADA and the Rehabilitation Act, a plaintiff must demonstrate (1) that he is a qualified individual with a disability; (2) that the defendants are subject to the ADA or the Rehabilitation Act; and (3) that he was denied the opportunity to participate*67 in or benefit from the defendants' services, programs, or activities, or was otherwise discriminated against by the defendants because of his disabilities. Powell v. National Bd. of Medical Examiners, 364 F.3d 79, 85 (2d Cir.2004). Discrimination includes the failure to make a reasonable accommodation. Henrietta D., 331 F.3d at 273. An individual is considered disabled in this context if he has a physical or mental impairment that substantially limits one or more major life activities. See 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B).

> [2] Tylicki's complaint contains no allegations describing how his supposed mental condition substantially limits a major life activity. See Weixel v. Bd. of Educ., 287 F.3d 138, 147 (2d Cir.2002) (plaintiff must identify the life activity he claims is impaired). But even if Tylicki had adequately pled a disability, he has failed to allege that he was denied access to CCC's programs, for though he was suspended from the school, he had originally been admitted and had attended classes, and his complaint does not allege that he attempted to re-enroll but was denied admission due to his disability. Furthermore, Tylicki's requested accommodation-a manifestation hearing as contemplated by the IDEA-is not reasonable, given that the IDEA does not apply to Tylicki and neither the ADA nor the Rehabilitation Act require such a procedure. In other words, the ADA and the Rehabilitation Act permit CCC to discipline a student even if the student's misconduct is the result of disability. Cf. Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 172 (2d Cir.2006) (ADA does not "require that

employers countenance dangerous misconduct, even if that misconduct is the result of a disability"). It follows that postponement of the disciplinary hearing to enable Tylicki to gather evidence of his alleged disability is not a reasonable accommodation, since CCC was entitled to suspend Tylicki even if his conduct was a manifestation of his alleged disability.

Here, the Complaint's alleged facts acknowledges the proffered reason for Professor Fisher reporting of the plaintiff as a safety concern for the college community.  The alleged actions by the college professionals in this case were appropriate and, seemingly, more important in today's college campus life.  Violence at institutions of higher education such as Virginia Tech and Northern Illinois University have required a re-examination of campus safety.  Such that college professional may release student records without consent to individuals who might need to know in circumstances relating to health and safety emergencies.  This reality has resulted in changes to FERPA regulations. See 34 CFR § 99.36 "What conditions apply to disclosure of information in health and safety emergencies?" Simply put, nothing alleged in the Complaint arises to a federal law violation.  Therefore, the defendants respectfully request dismissal of claims 1, 2 and 3.

**Point IV:**  PLAINTIFF'S NEW YORK HUMAN RIGHTS LAW CLAIM IS BARRED BY SOVEREIGN IMMUNITY AND ELECTION OF REMEDIES

Any discrimination claims under state law are likewise barred by the Eleventh Amendment.  The Eleventh Amendment protects states against suit in federal court for violations of state law unless the state consents to be sued. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 121, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). Here, "New York has not consented to suit in federal court through the Human Rights Law." Cajuste v. Lechworth Developmental Disabilities Service, __ F.Supp.3d __ (S.D.N.Y. Jan. 5, 2005)(collecting cases), 2005 U.S. Dist. LEXIS 82 at *8 - 9.  Nothing in the text of the HRL constitutes a waiver of immunity or consent to be sued. See Jungels v. State University College of New York, 922 F.

Supp. 779 (W.D.N.Y. 1996).  Likewise, plaintiff claims against state officials in their official

capacities are merely *de facto* suits against the state and are barred for precisely the reasons

discussed above. Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114

(1985).

In Kremer v. New York State Ins. Dept., 2009 WL 777721, 3 (S.D.N.Y.)

(S.D.N.Y.,2009) the Court held, "[T]he court lacks the subject matter jurisdiction to adjudicate a

claim against the Department under the HRL.  The Eleventh Amendment precludes an individual

plaintiff from seeking damages in federal court against a State or its agencies absent a waiver by

the State or abrogation by Congress, Pennhurst, *supra* at 465 U.S. 89, 100-02 (1984), and it is

well settled that "[n]othing in the HRL indicates that New York has waived its immunity such

that [an individual plaintiff] could pursue his HRL claim in federal court," Small v. Caiola, No.

96 Civ. 7945(LMM), 2001 WL 781080, at *2 (S.D.N.Y. June 19, 2000)."

The Second Circuit Court of Appeals in York v. Association of Bar of City of New York,

286 F.3d 122, 127 (C.A.2 (N.Y.),2002) aptly noted:

> The NYHRL provides,
>
> Any person claiming to be aggrieved by an unlawful discriminatory
> practice shall have a cause of action in any court of appropriate jurisdiction for
> damages ... and such other remedies as may be appropriate ... unless such person
> had filed a complaint hereunder or with any local commission on human rights.
>
> N.Y. Exec. Law § 297(9). Thus, by the terms of the statute and code,
> respectively, the NYHRL and CHRL claims, once brought before the NYSDHR,
> may not be brought again as a plenary action in another court. Moodie v. Federal
> Reserve Bank of New York, 58 F.3d 879, 882 (2d Cir.1995). Furthermore, once a
> plaintiff brings a case before the NYSDHR, he or she may appeal only to the
> Supreme Court of State of New York. N.Y. Exec. Law § 298. Appellant failed to
> appeal the adverse rulings by the NYSDHR to the Supreme Court of the State of
> New York, and instead attempted to relitigate her claims in the United States
> District Court, in contravention of the statutory and code schemes detailed above.

Here, the plaintiff improperly seeks review of the "SDHR decision [which] was arbitrary

and capricious and contrary to law" (Docket # 1, Complaint par. 80).  As such, the defendants

8

respectfully request that plaintiff's fourth claim be dismissed based on the court's lack of jurisdiction over the subject matter.

**POINT V:  NO 1ST AMENDMENT VIOLATION EXISTS.**

Plaintiff alleges in conclusory fashion that the defendants censured her for publishing a weblog (see Complaint par. 83), but her logic fails because no one other than herself "deleted it from the wordpress URL" (see Complaint par. 30).  Black's Law Dictionary (9th ed. 2009) defines censure as "An official reprimand or condemnation."  None exists in this case.

Therefore, the defendants respectfully request that plaintiff's fifth claim be dismissed for failure to state a claim upon which relief can be granted.

**POINT VI:  NO PROCEDURAL DUE PROCESS VIOLATION EXISTS.**

Plaintiff conclusory alleges that the defendants charges her with misconduct and penalized her for not participating in the SBCT process, but that in of itself is no due process violation.  The Court in Manigaulte v. C.W. Post of Long Island University, 659 F.Supp.2d 367, 378 (E.D.N.Y.,2009) aptly noted:

> [P]laintiff has not alleged sufficient facts to invoke the jurisdiction of the federal courts. Federal courts are confined "to adjudicating actual 'cases' and 'controversies.' " Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). To invoke the judicial power of the federal court, plaintiff must satisfy three elements: "[f]irst, the plaintiff must have suffered an 'injury in fact'- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, the injury and the 'conduct complained of' must be causally related; that is, the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.' " L.A.M. Recovery, Inc. v. Department of Consumer Affairs, 377 F.Supp.2d 429, 437 (S.D.N.Y.2005) (internal quotation marks and citation omitted), aff'd, 184 Fed.Appx. 85 (2d Cir.2006). In his current submission, plaintiff fails to allege any concrete and particularized injury in fact, and any harm he alleges is both conjectural and hypothetical.

Here, the plaintiff too fails to allege any concrete and particularized injury in fact.

Therefore, the defendants respectfully request the dismissal of plaintiff's sixth claim as a matter

of law.

### POINT VII:  NO DEFAMATION STIGMA PLUS CLAIM EXISTS.

As in this case, Hon. William M. Skretny, Chief Judge of the Western District of New York in <u>Nuttle v. Ponton</u>, 544 F.Supp.2d 175, 177 (W.D.N.Y.,2008) aptly noted:

> Plaintiff fails to allege that Defendants publicized the complaints by Professor Giambrone or disseminated the stigmatizing information outside of Buffalo State College. Without this element of publication, there is no risk of harm to Plaintiff's reputation in the community. Because Plaintiff has failed to allege that Defendants publicized the stigmatizing information, this Court must grant Defendants' Motion to Dismiss. Plaintiff has failed to state a cause of action under the stigma-plus test as set forth by the Second Circuit in <u>Patterson</u> and <u>Valmonte</u>. See <u>Patterson</u>, 370 F.3d at 330; <u>Valmonte</u>, 18 F.3d at 999-1000.

Here, there was no publication of stigmatizing information about the plaintiff outside SUNY Brockport by the defendants.  Therefore, the defendants respectfully request the dismissal of plaintiff's sixth claim as a matter of law.


### CONCLUSION

Based on the foregoing, the complaint fails to state a claim upon which relief can be granted as a matter of law and the Court lacks subject matter jurisdiction.  Therefore the complaint should be dismissed as a matter of law.

Dated: October 5, 2011
        Rochester, New York

                        ERIC T. SCHNEIDERMAN
                        Attorney General of the State of New York
                         *Attorney for Defendants SUNY at Brockport College,*
                        *Prof. Debra Fisher, Prof. Melissa Brown, Prof. Phyllis*
                        *Kloda, Karen Logsdon, and Ass't Dean Virginia Bachelor*


                          /s/ J. Richard Benitez
                        J. RICHARD BENITEZ
                        Assistant Attorney General, of Counsel
                        NYS Office of the Attorney General
                        144 Exchange Boulevard, Suite 200
                        Rochester, New York  14614
                        Telephone:  (585) 546-7430
                        Richard.benitez@ag.ny.gov

CERTIFICATE OF SERVICE

I certify that on October 5, 2010, I electronically filed the foregoing Memorandum of

Law, with the Clerk of the District Court using CM/ECF system, which sent notification of such

filing to the following:

1.      N/A

And, I hereby certify that I have mailed, by the United States Postal Service, the

document to the following non-CM/ECF participant(s):

1.      Tina Bonneau, Pro Se
        184-1 Meadow Farms
        North Chili, New York 14514

                        ERIC T. SCHNEIDERMAN
                        Attorney General of the State of New York
                          *Attorney for Defendants SUNY at Brockport College, Prof.*
                        *Debra Fisher, Prof. Melissa Brown, Prof. Phyllis Kloda,*
                        *Karen Logsdon, and Ass't Dean Virginia Bachelor*


                         /s/ J. Richard Benitez
                        J. RICHARD BENITEZ
                        Assistant Attorney General of Counsel
                        NYS Office of the Attorney General
                        144 Exchange Boulevard, Suite 200
                        Rochester, New York 14614
                        Telephone:  (585) 546-7430
                        richard.benitez@ag.ny.gov