UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TINA BONNEAU,

     Plaintiff

     v.

STATE UNIVERSITY OF NEW YORK AT
BROCKPORT, et al.

     Defendants

_____

Dkt. No. 11 cv 6273 (CJS)

UNITED STATES DISTRICT COURT
FILED
NOV 17 2011
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Tina Bonneau, Plaintiff
pro se
184-1 Meadow Farm S.
North Chili, NY 14514
585 594 0250

On the brief:
Aaron David Frishberg, Esq.

TABLE OF CONTENTS

COUNTER-STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Point I        PLAINTIFF HAS COGNIZABLE CLAIMS AGAINST SUNY-
               BROCKPORT AND ITS EMPLOYEES WHICH ARE NOT
               DEFEATED BY ELEVENTH AMENDMENT IMMUNITY FROM
               SUIT
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        A.     Defendant SUNY-Brockport's Officials, Sued in Their Official
               Capacities, are Liable for Prospective Injunctive Relief. . . . . . . . . 4
        B.     SUNY-Brockport Is Liable in Money Damages Under the Americans
               with Disabilities Act for Intentional and Malicious Acts of Disability
               Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        C.     SUNY-Brockport is Liable for Disability Discrimination Under the
               Rehabilitation Act of 1973, 29 U.S.C. § 794. . . . . . . . . . . . . . . . . 7
        D,     The Individual Defendants are Liable Under the New York State
               Human Rights Law for Aiding and Abetting Disability Discrimination
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Point II       DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT
               RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Point III.     DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO DUE
               PROCESS OF LAW
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Point IV.      DEFENDANTS' TREATMENT OF PLAINTIFF VIOLATES DUE
               PROCESS OF LAW UNDER THE DEFAMATION PLUS STANDARD
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

TABLE OF CASES

Board of Trustees of University of Alabama, v.  Garrett, 531 U.S. 356, 363-64 (2001)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
City of Cleburn  v. Cleburn Living Center, 473 U.S.432 , 448 (1985) . . . . . . . . . . . . 9-11

Ex parte Young, 209 U.S.123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). . . . . . . . . . . . . . . 4

Garcia v. SUNY Health Sciences Center, 280 F.3d 98, 108 (2d Cir. 2001). . . . . . . . . 5-7

Goldberg v. Kelly, 397 U.S. 254 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Goodman v. Georgia, 546 U.S.151 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

Nuttle v. Ponton,  544 F. Supp. 2d 175, 177 (W.D.N.Y. 2008). . . . . . . . . . . . . . . . 18, 19

Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . 18

Press v. State University of New York at Stony Brook, 127 F.Supp. 2d 127 (E.D. N.Y. 2005)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Sacca v. Buffalo State College, State Univ. of New York, 2004 WL 2095458, (W.D.N.Y.
Sept. 20, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Tennessee v.Lane, 541 U.S. 509, 124 S. Ct. 1978, 158 L.Ed. 2d 820 (2004). . . . . . . 5, 6

Tylicki v. St. Onge, 297 Fed. Appx. 65, 67, 2008 WL 4726328, 1 (2d Cir. 2008). . . . . 10

## COUNTER-STATEMENT OF FACTS

Plaintiff was enrolled as a student in SUNY-Brockport with a major in Studio Art. (Complaint, ¶¶ 7-8). Plaintiff had provided medical documentation of her disability, Post-Traumatic Stress Disorder, to the SUNY-Brockport Office for Students with Disabilities, and was granted accommodations including extended testing times, permission to take short breaks during classes, and assistance with getting notes missed during those breaks. (Id., ¶¶ 9-10, 13.)

In the Spring and Fall, 2008 semesters, Plaintiff witnessed abusive behavior toward students by Professor Debra Fisher. (Id., ¶¶ 19-21, 25). In December, 2008, when Plaintiff was picking up her portfolio of art assignments from Professor Fisher, Fisher insisted on speaking with Plaintiff about her treatment choices, telling her that there must be some kind of medication she could take, and that therapy was not helping her.(Id., 41 ¶). Plaintiff wrote on her weblog about these incidents of abuse of other students, and about instances of Professor Fisher not respecting her personal boundaries, questioning her focus and her artwork and education.(Id., ¶ 27)..

When Plaintiff subsequently enrolled in Professor Fisher's Printmaking II class, Art Department Chair Phylis Kloda told Plaintiff that Kloda would refer her to the college's Student Behavior Consultant Team, if she did not drop Printmaking II. (Id., 46 ¶). Professor Kloda carried out that threat two days later, asking the administrators if Plaintiff could not be administratively removed based on a list of false and fabricated events that Kloda had compiled. (Id., ¶ 47). Kloda specifically mentioned in her referral that she was concerned that Plaintiff was in therapy and not on medication. (Id., ¶ 48).

1

Plaintiff was notified of the SBCT referral by its chair, Karen Logsdon, but Logsdon repeatedly refused to disclose the ground on which Plaintiff was considered a "Student of Concern" or what conduct she was alleged to have engaged in. (Id., ¶¶ 48, 50, 52, 55, 58). Assistant Dean Bacheler also refused to disclose to Plaintiff what conduct she was alleged to have engaged in. (Id., ¶ 60).

Plaintiff requested as reasonable accommodations of her disability that she be told what the charges against her were, because she did not feel safe returning to school or having the meeting without knowing what was behind the referral. (Id., ¶ 50). Plaintiff also requested as reasonable accommodations that the meeting take place somewhere on the college campus other than the Health Center Counseling Office, and that her therapist be allowed to attend. (Id., 53 ¶). Logsdon refused these accommodations. (Id.)

Although made aware that Plaintiff did not feel safe returning to school until she knew what was behind the SBCT referral, and that Plaintiff was far behind in her class work as a result, Logsdon also refused to help her with this problem. (Id., ¶ 54). Assistant Dean Bacheler also refused to assist Plaintiff with extending times to make up missed work without her missed attendance or late work affecting her grades. (Id., ¶ 57).

In March, 2010, Professor Fisher, in an e-mail to Professor Kloda and Assistant Dean Bacheler, called Plaintiff a "ticking time-bomb" and stated that another student had stated she knew that Plaintiff was "crazy" and might go after Fisher with a gun, and that Plaintiff needed to be kept off campus and out of her classroom. (Id., ¶ 56). Plaintiff had engaged in no conduct to justify this characterization and this proposed treatment. (Id., ¶ 69).

Two days later, when Plaintiff went to the Art Department building to speak to

2

another teacher, Professor Fisher closed her classroom door and implied to the students in her class that Planitiff's presence was a threat to safety. (Id., ¶ 60).

On March 24, 2010, Plaintiff notified SUNY-Brockport that she would be filing an administrative complaint charging disability discrimination with the New York State Division of Human Rights, which she did file on March 29, 2010. (Id., ¶¶ 63-64). On April 1, 2010, Professors Kloda and Fisher attempted to lodge student misconduct charges against Plaintiff. (Id., ¶ 65). Plaintiff was not notified of these charges until she learned of them when they were submitted as evidence to the State Division of Human Rights by SUNY-Brockport on May 1, 2010. (Id., ¶ 66.).

3

## LEGAL ARGUMENT

Point I          PLAINTIFF HAS COGNIZABLE CLAIMS AGAINST SUNY-
                 BROCKPORT AND ITS EMPLOYEES WHICH ARE NOT
                 DEFEATED BY ELEVENTH AMENDMENT IMMUNITY FROM
                 SUIT

     A.          Defendant SUNY-Brockport's Officials, Sued in Their Official Capacities, are
                 Liable for Prospective Injunctive Relief.

Plaintiff alleges, *inter alia*, that she was discriminated against on the basis of her

disability, and in retaliation for her opposition to disability discrimination. The complaint

seeks relief including steps by Defendants in their official capacities to permit Plaintiff to

complete her courses and graduate from SUNY-Brockport without discriminatory or

retaliatory treatment, and to purge her academic record of grades and references which

are effected by her discriminatory and retaliatory treatment.

As discussed below, Defendant SUNY-Brockport is legally accountable for violations

of the Americans with Disabilities Act, Title II, 42 U.S.C. § 12131, et seq., and for violations

of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Prospective injunctive relief to cure or mitigate these violations of federal law is

available as a remedy against SUNY-Brockport officials sued in their official capacities.

Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

     B.          SUNY-Brockport Is Liable in Money Damages Under the Americans with
                 Disabilities Act for Intentional and Malicious Acts of Disability Discrimination

Plaintiff's complaint alleges that Defendants Kloda and Fisher attempted to lodge

disciplinary charges against her, that Defendant Fisher characterized her in an e-mail to

Defendants Kloda and Bacheler as "crazy" and "a ticking time bomb", and that the charges

against her were fabricated, and were based on conduct which had never taken place.

4

(Complaint, ¶¶ 64-68.) Moreover, these charges were brought only a week after Plaintiff notified SUNY-Brockport that she would be filing charges of disability discrimination with the New York State Division of Human Rights, and three days after she did so (id., ¶¶ 62-64), so that it is reasonable to infer that the false charges were brought in retaliation for her opposition to discrimination.

In Garcia v. SUNY Health Sciences Center, 280 F.3d 98, 108 (2d Cir. 2001), the Court of Appeals held that a state could be held liable in money damages when a Title II violation was motivated by either discriminatory animus or ill will due to disability.  It is respectfully submitted that Plaintiff's complaint alleges facts which meet this standard.

Defendants cite Press v. State University of New York at Stony Brook, 127 F.Supp. 2d 127 (E.D. N.Y. 2005), which dismissed a claim of disability discrimination against a State University for lack of subject matter jurisdiction, (id. at 135), although the plaintiff alleged a discriminatory animus and retaliatory intent, (id. at 130). The District Court in Press relied on Tennessee v.Lane, 541 U.S. 509, 124 S. Ct. 1978, 158 L.Ed. 2d 820 (2004), which it read as holding that only fundamental rights, such as the right of access to courts, was subject to Congressional power under Title II of the ADA, when invoked against a State, in light of the Eleventh Amendment..  The court in Press acknowledged that Congress had unequivocally expressed an intent to abrogate the Eleventh Amendment in passing the Americans with Disabilities Act, and that the United States Supreme Court, in Lane, had found that Congress had documented a pattern of disability discrimination in the administration of public education, a holding binding on the lower courts. Press, supra, at 134.

Press acknowledged that courts in the Second Circuit were split as to whether the

5

United States Supreme Court's holding in Lane implicitly overruled Garcia. Press noted that in at least one case, Sacca v. Buffalo State College, State Univ. of New York, 2004 WL 2095458, (W.D.N.Y. Sept. 20, 2004), the District Court had held that the Lane holding had no application outside the context of denial of access to the courts, and that Garcia continued to control the extent of liability of states in other contexts in this Circuit.

Press also acknowledged that since Lane, the Second Circuit has not addressed the continued vitality of Garcia. It is respectfully submitted that in the absence of a definitive pronouncement from the United States Supreme Court stating a rule of law inconsistent with Garcia, hat opinion remains controlling on the trial courts of this Circuit.

Moreover, since Lane, the United States Supreme Court has again addressed the extent to which Title II abrogates the States' Eleventh Amendment immunity. In Goodman v. Georgia, 546 U.S. 151 (2006), Justice Scalia, writing for the Court, held that Congress's abrogation of Eleventh Amendment immunity was valid at least to the extent that violations of the Americans with Disabilities Act Title II were also violations of the Eighth and Fourteenth Amendments. The Court remanded for a determination in the first instance by the lower courts "insofar as misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." The result reached by the Court was endorsed by Justice Stevens in the concurrence joined in by Justice Ginsburg, so that the Court was unanimous in reaching this result.

It is thus clear that the United States Supreme Court did not believe that Lane foreclosed the possibility that Congress could enforce Title II against the States, even where no fundamental right or suspect classification was involved, and that Press was

6

premature in concluding that Garcia was no longer good law after Lane.

    C.    SUNY-Brockport is Liable for Disability Discrimination Under the
        Rehabilitation Act of 1973, 29 U.S.C. § 794

In Garcia v. SUNY Health Sciences Center, supra, 280 F.3d 98, the Court of Appeals held that there could not have been a valid waiver of sovereign immunity under the Rehabilitation Act by the State of New York in accepting federal funds, after the enactment of the Americans with Disabilities Act, because the State would have reasonably believed that its immunity from suit had already been abrogated by the ADA. But the events complained of in the case at bar occurred after the announcement of the decision in Garcia, which put the States in this Circuit on notice that to the extent that they might be immune from suit under the Americans with Disabilities Act, that immunity was waived as to suit under the Rehabilitation Act by the acceptance of federal funds. Cf. Sacca v. Buffalo State College, p.4, holding that from the time of the United States Supreme Court in Board of Trustees of University of Alabama, v. Garrett, 531 U.S. 356, 363-64 (2001) on February 21, 2001, New York should have been aware of the possibility that the abrogation of sovereign immunity by the ADA might not be effective, so that its acceptance of federal funds after that date gave rise to waiver for purposes of 504 of the Rehabilitation Act.

In addition to the acts above based on a disability animus, Plaintiff's complaint alleges that Defendant Fisher, when she was Plaintiff's art professor, knowing that Plaintiff suffered from PTSD harassed her by telling her that "there must be some medication you can take," "that therapist is not helping you" and other remarks about Plaintiff's treatment choices. (Complaint, ¶ 39), that when she complained to Defendant Kloda, who was the

7

chair of the Art Department, about Defendant Fisher's behavior, Defendant Kloda also questioned her about her disability and treatment choices in a harassing manner, (id., ¶¶ 42-43). Defendant Kloda threatened to report Plaintiff to the Student Behavior Consultant Team (SBCT) if Plaintiff did not drop Defendant Fisher's Printmaking II class, and carried out that threat, making false charges to the SBCT and seeking to have Plaintiff administratively removed, and that Kloda told the SBCT that she was concerned because Plaintiff was in therapy but not medicated. (id., ¶¶ 44-46).

Plaintiff alleges that Defendant Logsdon, the chair of the Student Behavioral Consultant Team repeatedly refused to tell her the basis of her being investigated as a "student of concern," even after being told that Plaintiff was afraid to attend the meeting or to return to the campus until she knew what behavior she was alleged to have engaged in. (Id.., ¶¶ 48, 50, 53, 60). Logsdon also refused to have the meeting take place elsewhere on the campus than the Health Center Counseling Office, with Plaintiff's therapist present. (Id..¶¶ 51, 60.)

Defendant Bacheler, an Assistant Dean, also refused to disclose to Plaintiff what alleged conduct she was accused of, (id., ¶ 55), and refused to assist her to obtain additional time to make up the classwork she had missed as a result of being too fearful to attend classes while the SBCT charges were pending. (Id., ¶¶ 53, 55). Instead, Bacheler told Plaintiff she would not be allowed to pass Printmaking II, and that her grade in Painting would also be affected. (Id., ¶ 58). Defendant Logsdon also refused to assist Plainttiff to obtain extensions to make up the work she had missed. (Id., ¶ 53.)

When Plaintiff went to the Art Department building to speak to another teacher, Defendant Fisher closed the door to the classroom where she was teaching a class, and

began discussing Plaintiff with the students, implying that Plaintiff was a threat to safety, resulting in one student suggesting that Fisher call the armed campus police. Plaintiff, terrified, left the campus. (¶ 59). When she notified Defendant Bacheler of this incident, Bacheler did nothing. (Id.)

Taken together, these allegations plead a pattern of singling Plaintiff out for different, less favorable treatment based upon her mental disability, and based upon the perception of her as a person with a mental disability, including treating her as a person to be shunned and feared, without her having engaged in any actual misconduct or threatening actions, and of failure to reasonably accommodate her disability in the way a meeting about allegations against her was to be conducted, when to do so would not have fundamentally altered the process. Plaintiff was also denied the reasonable accommodation of being allowed to complete her class work, taking into account the effect on her as a person with PTSD of the trauma of the charges against her, which were never disclosed, in the Student Behavior Consultant Team process.

This discriminatory conduct to which Plaintiff was subjected constituted a violation of her right to a reasonable accommodation under the Rehabilitation Act of 1973, for which Defendant SUNY-Brockport is liable.

Indeed, the Supreme Court of the United States, in City of Cleburn v. Cleburn I Living Center, 473 U.S.432 , 448 (1985) , held that the unequal treatment of a group of persons with mental disabilities based upon negative attitudes and fear, unsubstantiated by legitimate factors bowed to "irrational prejudice" and violated their right to the equal protection of the law. As noted in Subpoint I- A, above, the United States Supreme Court,

9

in Goodman v. Georgia, supra, 546 U.S. 151, held that the Americans with Disabiites Act provided protection against the states at least to the extent that the same acts were prohibited by the Fourteenth Amendment. Certainly, the ADA and the Rehabilitation Act can be read as enforcing a right to not be treated less favorably based upon irrational fear and prejudice because of a mental disability that is at least co-extensive with that recognized in City of Cleburn on constitutional grounds.

Defendants, citing Tylicki v. St. Onge, 297 Fed. Appx. 65, 67, 2008 WL 4726328, 1 (2d Cir. 2008), argue that a student does not have the right not to be disciplined for dangerous misconduct even if that misconduct is the result of disability, and that therefore, the postponement of a disciplinary hearing so that Tylicki could gather evidence of his disability was not a reasonable accommodation.

But Plaintiff in the case at bar never sought a postponement of the SBCT hearing. The only accommodations she sought in relation to it were that it be held somewhere on campus other than the University Health Care Center, that her therapist be permitted to attend it, and that she be told what conduct was alleged to be the ground of her being identified as a "student of concern."

Defendants attempt to justify their actions on the ground that Plaintiff, in her complaint, alleges that Defendant Fisher's proffered reason for reporting Plaintiff was a safety concern for the college community. But Plaintiff also makes clear that there was no conduct on her part that might justify such concerns, that the things Plaintiff was accused of did not take place, (Complaint, ¶ 69), that the charges against her were false and fabricated (id., ¶ 47), and that Defendants Fisher and Kloda expressed concerns because Plaintiff was in therapy but not on medication (id., ¶¶ 41,48), a fact mentioned by Kloda in

10

her SBCT referral. (Id., ¶ 48).

Taking these allegations as true, as the Court must in deciding a motion to dismiss for failure to state a cause of action, including the allegations that Plaintiff had not engaged in any misconduct and that the allegations against her were false and fabricated, the mere fact that Defendants knew Plaintiff was in therapy but not on medications, and that another student had characterized her as crazy, and without any apparent factual basis, thought she might come after Defendant Fisher with a gun, does not justify on the basis of security concerns the failure to reasonably accommodate Plaintiff's disability.

Indeed, these "justifications," and the invocation of the events of Virginia Tech, smack of the fear and prejudice eschewed by the United States Supreme Court in City of Clelburn, supra, in stereotyping all persons with psychiatric disabilities as potentially violent, at least if they are not taking medications.

D,      The Individual Defendants are Liable Under the New York State Human Rights Law for Aiding and Abetting Disability Discrimination

SUNY-Brockport is entitled to invoke the State's sovereign immunity, since New York State has not consented to being sued in federal court for violations of the New York State Human Rights Law, N.Y. Executive Law § 290 et seq.

But the individual Defendants, sued in their individual capacities, do not share in this immunity. Under the New York State Human Rights Law, these individuals can be sued for aiding and abetting one another in discriminating against Plaintiff on the basis of her disability.

The doctrine of "election of remedies" alluded to in passing by Defendants, is one for summary judgment, not for a motion to dismiss for failure to state a claim. Moreover,

11

Defendants have not shown, and will not be able to show, that the individual defendants were named as Respondents in her administrative complaint before the New York State Division of Human Rights.

Point II        DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS

Plaintiff alleges in her complaint that Defendant Fisher engaged in conduct in relation to her and to other students which was abusive, (Complaint, ¶¶ 19-21, 25-27), that she published an account of this conduct on her weblog, (id., ¶ 29), that subsequently, she was warned by Defendant Kloda that she would be reported to the Student Behavior Consultant Team if she did not drop Professor Fisher's Printmaking II class, (id., ¶ 46), that Kloda carried out this threat by making false and fabricated charges to the SBCT about her, (id., ¶ 47), that Fisher sought to have her banned from the campus, (id., ¶ 56), that Defendant Batcheler, an Assistant Dean, told her that she would not be allowed to pass Printmaking II, (id., ¶ 58), that Fisher closed her classroom door and implied to her students that Plaintiff was a threat,  (id., ¶ 60), and that Defendants Kloda and Fisher sought to have misconduct charges brought against her. (Id., ¶ 65).

In the face of these allegations, Defendants argue that there was no "censure", quoting a definition from Black's Law Dictionary, an official reprimand or condemnation. But it is clear, whether or not all the mistreatment of Plaintiff motivated by her criticism of Fisher fits neatly into a dictionary definition, that Plaintiff was in fact condemned to fail Printmaking II, if she didn't withdraw from it, to be faced with false charges, to be threatened with being banned from the campus, to being described to other students as a threat, and to face charges of misconduct. It is no stretch of the dictionary definition to characterize this course of retaliatory conduct as an official condemnation.

Defendants also point out that it was Plaintiff herself who took down the weblog posting. Were it not followed by a quotation from Black's Law Dictionary, one might believe that this observation is based on confusing being "censured" with being "censored." As it

13

is, the observation stands only as a *non sequitur*, given the retaliation against Plaintiff after she had published her criticism of Professor Fisher.

Point III.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO DUE
              PROCESS OF LAW

Plaintiff alleges that Defendant Logsdon, the chair of the Student Behavior Consultant Team, summoned her to appear before the SBCT, as a "Student of Concern." (Complaint, ¶ 49). The SBCT had the power to ban Plaintiff from classes. (Id., ¶ 47). Defendant Logsdon repeatedly refused to disclose to Plaintiff what conduct she was alleged to have engaged in, or the grounds of the referral. (Id., ¶¶ 50, 52, 55, 58.) Defendant Bacheler, an Assistant Dean, also refused to disclose to Plaintiff the grounds of the SBCT referral. (Id., ¶ 57).

Plaintiff experienced problems in doing her class work because of the Defendants' refusal to disclose the nature of the allegations against her, so that she could clear them up and get back to her class work. (Id., ¶ 55). Plaintiff had been notified of the SBCT summons on February 23, 2010. (Id.,¶ 49). By March 4, 2010, she was far behind in her class work. (Id., ¶¶ 53-54).

_____The SBCT process, as it emerges from Plaintiff's complaint, is reminiscent of Franz Kafka's The Trial. The United States Supreme Court, in Goldberg v. Kelly, 397 U.S. 254 (1970), held that the right to a continuing government benefit, here, the ability to continue in a public college, encompassed the right to notice and an opportunity to be heard.. To be adequate, notice must detail the reasons for a proposed action.   Goldberg v.Kelly, supra, 397 U.S. at 268.   And see, Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L.ed. 2d 18 (1976), In the context of an allegation of conduct being considered by a college committee that can decide to remove the student from class, the notice, to be meaningful, must give some indication of what conduct is being alleged. Without it, the

15

student has no meaningful ability to address the allegations.

Defendants argue that there is no concrete injury in fact alleged by Plaintiff. Presumably, they mean by this that although Plaintiff was unable to continue with her school work because of the toll taken on her by the SBCT process, she cannot complain about the lack of due process in the way that the committee conducted its business because she did not actually appear before it and subject herself to its decision.

But a due process violation does not require that the unfair process be played out to its conclusion to be actionable. Here, the threat to her college career from the committee's announced intent to deliberate had the harmful effect on her of preventing her from carrying on her studies. If, as Plaintiff contends, summoning her to meet with the SBCT because she was a "student of concern" without disclosing to her what the ground was in her alleged behavior for the summons, Plaintiff need not have awaited an outcome from the committee's deliberation to sue over that process. The harm it did to her was manifest in the loss of her ability to study because of it.

Plaintiff also alleges that Defendants Fisher and Kloda sought to bring misconduct charges against her. (Complaint, ¶ 65.) Plaintiff was never given notice of these charges, or of their adjudication, in the normal course of events. (Id.,¶ 67). Instead she learned of them .when the University submitted them as evidence in its response to her New York State Division of Human Rights complaint. (Id.,¶ 66). Although this submission suggests that the charges were given some credence by SUNY-Brockport, without discovery, Plaintiff has no way of knowing what disposition, if any, was made of these charges.

It is clear, however, that to the extent that there was an adjudication, or that these charges remain pending, the lack of notice of them to Plaintiff blatantly violated her right

16

to due process of law.

Point IV.    DEFENDANTS' TREATMENT OF PLAINTIFF VIOLATES DUE
             PROCESS OF LAW UNDER THE DEFAMATION PLUS
             STANDARD

Plaintiff sets out in the Complaint that Defendant Fisher implied to a class of her

students that Plaintiff was a threat to safety. (Complaint, ¶ 60). This occurred immediately

after a meeting Plaintiff had with Defendant Bacheler, in which Bacheler had told Plaintiff

that she would not be allowed to pass Printmaking II, no matter what, and that her grade

in painting would also be affected.  (Id.., ¶¶ 57, 60).

The Second Circuit has stated the elements of a claim of a due process violation

under the defamation plus standard: "(1) Defendants made stigmatizing statements about

her that call into question her 'good name, reputation, honor, or integrity, or that denigrate

her confidence as a professional and impugn her professional reputation in such a fashion

as to effectively put a significant roadblock in her continued ability to practice her

profession, that the stigmatizing statements were made public, and that the stigmatizing

statements were made contemporaneously with Plaintiff's dismissal." Nuttle v. Ponton,

544 F. Supp. 2d 175, 177 (W.D.N.Y. 2008), quoting Patterson v. City of Utica, 370 F.3d

322, 330 (2d Cir. 2004).

Clearly, the statement by Professor Fisher to a class of Plaintiff's colleagues among

the SUNY-Brockport art students had the capacity to put a significant roadblock in the path

of her ability to continue as an art student.  This occurred at the same time that Plaintiff

was told that she would not be permitted to pass Defendant Fisher's Printmaking II class,

and that her grade in Painting would also be affected.  If this was not an outright dismissal,

it nonetheless put Plaintiff on notice that she was being penalized in her ability to

successfully complete the course work in her major, and would likely continue to face such

18

penalties, even if she was willing to face the opprobrium of her fellow-students.

Defendants argue that Plaintiff has not pled the element of publication, citing Nuttle. But Nuttle was dismissed because the plaintiff in that case had literally alleged no publication, but only the college administration's internal knowledge of a charge lodged by one of its professors against her. When Nuttle speaks of there being no publication outside the college community, it is referring to the community of administrators with access to that student's file, including the unadjudicated charge in it.

In the case at bar, Defendant Fisher announced Plaintiff being a threat to safety to an entire class of her art students. It is nonsense to assert that this was no "publication" merely because those who heard the allegations were themselves enrolled in SUNY-Brockport.

19

## CONCLUSION

Plaintiff has stated viable and plausible causes of action against the Defendants.

Defendants motion to dismiss should be denied.

Tina Bonneau

Tina Bonneau, pro se
184-1 Meadow Farm S.
North Chili, NY 14514
585 594 0250

I, Aaron David Frishberg, Esq. , prepared this memorandum of law on behalf of Plaintiff.

My admission to the United States District Court for the Western District of New York is

pending.

Aaron David Frishberg

Aaron David Frishberg
116 W. 111th Street
New York, NY 10026
212 740 4544

20

## Declaration of Service

I, Tina Bonneau, declare under penalties of perjury pursuant to federal law that on November 17, 2011, I mailed a true copy of the within Memorandum of Law to Assistant Attorney General J. Richard Benitez, NYS Office of the Attorney General, 144 Exchange Boulevard, Suite 200, Rochester, NY 14614.

Executed this 17th of November, 2011.

Tina Bonneau