UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TINA BONNEAU,

                Plaintiff,

-vs-

STATE UNIVERSITY OF NEW YORK AT BROCKPORT, PROFESSOR DEBRA FISHER, PROFESSOR MELISSA BROWN, PROFESSOR PHYLLIS KLODA, KAREN LOGSDON and ASSISTANT DEAN VIRGINIA BACHELER,

                Defendants.

AMENDED
DECISION AND ORDER

11-CV-6273-CJS

**APPEARANCES**

For Plaintiff:                                          Aaron David Frishberg, Esq.
                                                  116 W. 111th Street
                                                  New York, NY 10026
                                                  212-740-4544

For Defendants:                                      J. Richard Benitez, A.A.G.
                                                  NYS Attorney General's Office
                                                  144 Exchange Boulevard, Suite 200
                                                  Rochester, NY 14614
                                                  585-546-7430

**INTRODUCTION**

      **Siragusa, J.** This civil rights case is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Notice of Motion to Dismiss, Oct. 5, 2011, ECF No. 10. For the reasons stated below, Defendants' motion to dismiss is granted as to the first, second, fourth, fifth, sixth and seventh

causes of action; and denied as to the third cause of action, the retaliation and procedural Due Process claims, respectively.[1]

## BACKGROUND

The Court assumes that the allegations in Plaintiff's complaint are true for the purposes of analyzing Defendants' motion. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). In the fall of 2007, Tina Bonneau ("Plaintiff"), who had previously been a student at the State University of New York at Brockport ("SUNY Brockport"; "Brockport")—a public university—re-enrolled and resumed her studies at SUNY Brockport. In the spring semester of 2008, Plaintiff notified Brockport's Office for Students with Disabilities ("OSD") that she was disabled.[2] Brockport provided accommodations, such as extended test-taking time, short breaks during classes, and providing notes for periods of missed class time.

Defendant Debra Fisher ("Fisher"), Plaintiff's art professor, inquired as to the specific nature of the disability, and Plaintiff informed her, without detail, that Plaintiff suffered from Post-Traumatic Stress Disorder. Plaintiff and Fisher developed a friendship, and Plaintiff showed Fisher "some of her pre-art school artwork which was hosted on [her] anonymous personal weblog ('blog')."[3] Compl. ¶ 16, Jun. 1, 2011, ECF No. 1. Plaintiff further related that Fisher, "became a regular reader of the blog and learned of many very personal facts about Plaintiff's mental health history, including childhood

---

[1] This Amended Decision and Order is entered to correct the introduction paragraph, which erroneously indicated that the sixth cause of action could go forward.

[2] The complaint does not contain any details concerning Plaintiff's alleged disability.

[3] "Blog" is defined as "a Web site that contains an online personal journal with reflections, comments, and often hyperlinks provided by the writer." "blog." *Merriam-Webster.com*. 2013. http://www.merriam-webster.com (4 Dec 2013).

2

traumas and the traumatic, disabling experiences with psychiatry that destroyed her health and nearly ended her life." *Id.* ¶ 18.

Also in the spring semester of 2008, Plaintiff alleges she witnessed "a very serious argument in Drawing I that occurred between Defendant F[isher] and a student who subsequently chose to drop the class." *Id.* ¶ 19. She further alleges that Fisher, "screamed at [the student] to shut up and engaged in heated dialogue in front of the entire class." *Id.*

In the fall 2008 semester, Plaintiff took a Printmaking I class with Fisher and alleges that Fisher "was verbally abusive" to the student, who withdrew from the class. *Id.* ¶ 21. She further alleges "[t]hat the same student was often the subject of disparagement by [Fisher] in her private e-mails to Plaintiff." *Id.* ¶ 21.

Also in the fall 2008 semester, Fisher started sharing personal information with Plaintiff, including her thoughts about, and the grades of, other students in the class, in violation of the Federal Education Rights and Privacy Act ("FERPA"). Plaintiff notified Brockport of Fisher's acts and her concern and alleges that Brockport's administrators (whom she does not name) challenged her to "'prove it'." Compl. ¶ 24.

In November 2008, Plaintiff contacted the Psychology Department Chairperson, Melissa Brown ("Brown") by email, and related that one of Plaintiff's professors refused to grade one of her papers due to its "tone." Brown referred Plaintiff to the Student Behavioral Consultant Team ("SBCT").

Around November 21, 2008, Plaintiff posted negatively about Fisher on her blog, including the incidents in which Fisher had treated students harshly in front of the

3

class. Fisher read the posts and, Plaintiff alleges, "returned to the blog obsessively to read that post, and she began to follow Plaintiff's friends blogs. This went on until Plaintiff saved the blog to a file and deleted it from the wordpress URL."[4] Compl. ¶ 30.

In December 2008, Plaintiff set up a time to drop off a project. When Plaintiff went to drop off the project, Fisher was in the classroom and, Plaintiff alleges,

> began to harass Plaintiff about her treatment choices, saying: "There MUST BE some kind of medication you can take!" "That art therapist is not helping you." "Therapy is not helping you." She continued with harassing comments about Plaintiff's treatment choices and insisted that this was the reason Plaintiff chose to end the friendship and possibly leave the Department.

Compl. ¶ 41. Plaintiff alleges that Fisher then, "continued to invade Plaintiff's privacy with [G]oogle searches for Plaintiff, following Plaintiff's friends' blogs from around the country." *Id.* ¶ 42. Further, Plaintiff states she contacted Fisher by email in December 2008 "with a warning that Plaintiff would take legal action if Defendant FISHER didn't cease, and Defendant FISHER apologized, but then continued." *Id.* ¶ 43.

In the spring semester of 2010, Plaintiff signed up for another course with Fisher. "Events took place," Compl. ¶ 42, that led Plaintiff to inform Defendant Phyllis Kloda ("Kloda"), the Art Department Chairperson, about Fisher's conduct. Kloda met with Plaintiff on December 2 and allegedly harassed her with questions for three hours, causing Plaintiff to suffer from extreme emotional distress. Kloda threatened to report Plaintiff to the SBCT.

---

[4] "WordPress.com is a hosting platform that makes it easy for anyone to publish online." WordPress.com vs. WordPress.org, http://en.support.wordpress.com (last visited Dec. 4, 2013). URL is defined as, "the address of a resource (as a document or Web site) on the Internet that consists of a communications protocol followed by the name or address of a computer on the network and that often includes additional locating information (as directory and file names)." "URL." *Merriam-Webster.com*. 2013. http://www.merriam-webster.com (4 Dec 2013).

On February 23, 2010, Defendant Karen Logsdon ("Logsdon"), the Chairperson of the SBCT, sent Plaintiff an email requesting a meeting between Plaintiff and the SBCT based on a report that classified Plaintiff as a "student of concern." Despite multiple requests from Plaintiff, Logsdon never provided the grounds for her classification as a "student of concern." Plaintiff informed Logsdon that she was afraid to meet with the SBCT, and afraid to be at school altogether, without knowing the reasons for the SBCT referral. Consequently, Plaintiff stayed away from school, her schoolwork was not completed, and her grades suffered.

On March 9, 2010, Fisher emailed Kloda and Defendant Assistant Dean Virginia Bacheler ("Bacheler"), stating that Fisher had heard that Plaintiff was "crazy" and a "ticking time bomb" who might go after Fisher with a gun. Bacheler met with Plaintiff on campus on March 11, 2010. Bacheler kept the door open, allegedly violating Plaintiff's privacy. Bacheler yelled at Plaintiff, did not disclose the SBCT grounds, and told Plaintiff that her missed classwork would adversely affect her grades, including a failing grade in one class, and that Plaintiff would not be given extra time to make up the class work. At some point after the meeting, but on the same day as the meeting, Plaintiff went into the same building that Fisher was in to speak with another professor about the meeting with Bacheler. Fisher, Plaintiff observed, "closed the door to her class room and began to discuss Plaintiff with the students in her class, implying that Plaintiff's presence was a threat to safety, resulting in the suggestion by one student that [Fisher] call the armed campus police." Compl. ¶ 60.

On the same day, March 11, Plaintiff emailed Bacheler about the incident she contends occurred after her meeting and stated that she did not feel safe returning to classes after that day's events, but would be willing to go forward with the SBCT meeting at an off-campus location; the off-campus request was denied.

On March 24, 2010, Plaintiff notified Brockport that she was filing an administrative complaint with the New York State Division of Human Rights ("NYSDHR") alleging disability discrimination. Plaintiff filed the complaint on March 29, 2010.

On April 1, 2010, defendants Kloda and Fisher sought to file student misconduct charges against Plaintiff. Plaintiff received documents from the NYSDHR which included Brockport's rebuttal to Plaintiff's NYSDHR complaint, and the student misconduct charges.

Plaintiff's complaint alleges seven causes of action:

(1) SUNY Brockport, through its agents, did not make modifications to accommodate Plaintiff's disabilities, and treated Plaintiff less favorably because of her disabilities, in violation of the Americans with Disabilities Act ("ADA").

(2) SUNY Brockport, through its agents, did not make modifications to accommodate Plaintiff's disabilities, and treated Plaintiff less favorably because of her disabilities, in violation of the Rehabilitation Act ("RA").

(3) SUNY Brockport retaliated against Plaintiff because of her opposition to disability discrimination by: treating her with hostility, denying her an equal opportunity to complete her coursework, referring her to a disciplinary board (SBCT) without providing an explanation, for her use of the New York state administrative complaint process in filing a complaint with the NYSDHR, and by initiating a disciplinary proceeding

against her, in violation of the ADA and RA.

(4) SUNY Brockport and its agents discriminated against Plaintiff, and aided and abetted discrimination against Plaintiff, because of her disability, and in retaliation for her opposition to discrimination and her filing of an administrative complaint with the NYSDHR, in violation of New York State Human Rights Law, Executive Rights Law, Section 290 *et seq*.

(5) SUNY Brockport and its agents violated Plaintiff's First and Fourteenth Amendment rights by censuring her for her blog posts, for which Plaintiff seeks redress under 42 U.S.C. § 1983.

(6) Brockport, through its agents, charged Plaintiff with misconduct, denied her an opportunity to defend against the disciplinary charges, and penalized her for not participating in the SBCT process, while not disclosing why she was subject to the process, denying Plaintiff the right to due process, for which Plaintiff seeks redress under 42 U.S.C. § 1983.

(7) Defendant Fisher violated Plaintiff's due process rights under the "defamation plus" standard by causing harm to Plaintiff's reputation and denying Plaintiff the ability to continue with her studies, for which Plaintiff seeks redress under 42 U.S.C. § 1983.

## STANDARDS OF LAW

### *Rule 12(b)(6) Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial

7

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are merely consistent with a defendant's liability." *Id.* (internal quotation marks omitted). Applying this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

***Americans with Disabilities Act***

The ADA provides in pertinent part that, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.S. § 12112(a). To allege a plausible case of discrimination under the ADA, a plaintiff must show that:

> (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability.

*Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (citation omitted). The ADA definition of disabled is an impairment which "substantially limits one or more of a plaintiff's major life activities."[5] *Wernick v. Federal Reserve Bank of New York*, 91 F.3d

---

[5] If Plaintiff were to allege that Brockport "regarded her as" disabled so as to argue that she was disabled, she would still not meet the pleading requirement, as the Second Circuit has observed, "A plaintiff cannot state a claim under the 'regarded as' prong of the ADA or the RHA simply by alleging that the employer believes some physical condition, such as height, weight, or hair color, renders the plaintiff disabled. Rather, the plaintiff must allege that the employer believed, however erroneously, that the plaintiff

8

379, 383 (2d Cir. 1996).

*Rehabilitation Act*

> To establish a prima facie violation of section 504 of the Rehabilitation Act[6], a plaintiff must prove that: (1) he or she is a "handicapped person" as defined in the Rehabilitation Act; (2) he or she is "otherwise qualified" to participate in the offered activity or to enjoy its benefits; (3) he or she is being excluded from such participation or enjoyment solely by reason of his or her handicap; and (4) the program denying the plaintiff participation receives federal financial assistance. *Doe v. New York Univ.*, 666 F.2d at 774-75. Once a prima facie violation of section 504 has been established, "the defendant must present evidence to rebut the inference of illegality." *New York State Ass'n for Retarded Children* v. Carey, 612 F.2d 644, 649 (2d Cir. 1979).

*Rothschild v. Grottenthaler*, 907 F.2d 286, 289-90 (2d Cir. 1990).

A handicapped person is defined under the act as follows:

"individual with handicaps" means, for purposes of titles IV and V of this Act [29 U.S.C.A. §§ 780 *et seq.*, 790 *et seq.*], any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C.S. § 706(9)(B).

*Retaliation*

In order to state a claim for Retaliation, a plaintiff must plausibly allege that "(1) [Plaintiff] engaged in a protected activity; (2) the employer was aware of the protected activity; (3) the employer took adverse action; and (4) a causal connection exists between the protected activity and the adverse action." *Shah v. N.Y. State Dept. of Civil Service*, 341 Fed. Appx. 670, 673 (2d Cir. 2009).

---

suffered from an 'impairment' that, if it truly existed, would be covered under the statutes and that the employer discriminated against the plaintiff on that basis." *Francis v. City of Meridien*, 129 F.3d 281, 285 (2d Cir. 1997)

[6] Plaintiff's complaint incorrectly cited 29 U.S.C.§ 621 *et seq.* for the Rehabilitation Act cause of action. The correct citation is 29 U.S.C. § 701.

9

*New York State Human Rights Law*

> The standards relating to burden and order of proof in employment discrimination cases brought under the New York State Human Rights Law are the same as those established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (411 US 792, 802-804) and *Texas Dept. of Community Affairs v. Burdine* (450 US 248, 252-253) for cases brought pursuant to Title VII of the Civil Rights Act of 1964. *Matter of Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937; *Ioele v. Alden Press*, 145 A.D.2d 29, 35 (N.Y. App. Div. 1989). The three-step process laid out in those cases requires that, first, the plaintiff establish a prima facie case of discrimination[7].

*Sogg v. American Airlines*, 193 A.D.2d. 153, 155-56 (N.Y. App. Div. 1st Dept. 1993).

*First Amendment*

In the context of a civil rights case alleging a First Amendment retaliation claim, the Second Circuit wrote that,

> [t]o survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.

*Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing to *Dawes* for this principal).

*Procedural Due Process*

A procedural due process claim requires proof of two elements: "(1) the existence of a property or liberty interest that was deprived; and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dept.*, 692 F.3d 202, 218 (2d Cir. 2012).

---

[7] See above under subheading "Americans with Disabilities Act."

> The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution. See *Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review. *See Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).

*Narumanchi v. Board of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988).

### *Procedural Due Process, Defamation Stigma Plus*

A § 1983 liberty interest claim of this sort—commonly referred to as a "stigma plus" claim—requires a plaintiff to allege: (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false; and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement. *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (citations and internal quotation marks omitted).

### *Rule 12(b)(1) Subject Matter Jurisdiction and Election of Remedies*

In order to survive a Rule 12(b)(1) motion to dismiss, the court must have subject matter jurisdiction. The election of remedies doctrine presents one way in which a court may not possess subject matter jurisdiction.

"Under New York's election of remedies doctrine, 'a person claiming to be aggrieved by an unlawful discriminatory practice may elect to seek redress in either an administrative or judicial forum where different rights and remedies may be pursued.' These remedies, however, are mutually exclusive…." *Wiercinski v. Mangia 57, Inc.*, No. 09–CV–4413, 2010 U.S. Dist. LEXIS 66498, *6 (E.D.N.Y. Jul. 2, 2010) (internal citations and quotations omitted).

11

**ANALYSIS**

***Americans with Disabilities Act; Rehabilitation Act***

Plaintiff alleges that SUNY Brockport denied her reasonable accommodations for her known disabilities and treated her less favorably based upon her disabilities, in violation of the ADA and RA. Plaintiff has alleged that Brockport is a covered entity as defined under the ADA, and that Brockport received federal financial assistance as required under the RA. However, Plaintiff must further allege that she is disabled under the ADA, defined as an impairment that substantially limits at least one major life activity. *Wernick*, at 383. And, under the RA, Plaintiff must allege that she is handicapped, defined as an impairment that substantially limits at least one major life activity. 29 U.S.C.S. § 706(9)(B).

In the complaint, Plaintiff merely makes a conclusory allegation that she was a "person with disabilities within the meaning of the Americans with Disabilities Act, the Rehabilitation Act, and the New York State Human Rights Law." She does not allege any fact or detail describing how her disability impairs a major life activity. Although Defendants granted Plaintiff extended testing time, permission to take short breaks during classes, and to be provided assistance with any class notes missed during those breaks, those accommodations do not provide a factual basis to support her conclusory allegation of disability. Because Plaintiff has failed to allege a disability that impairs a major life activity as required by the ADA or the RA, under the 12(b)(6) standard, Plaintiff has failed to state a plausible claim upon which relief can be granted. Accordingly,

the motion to dismiss the first and second causes of action is granted.

Since the Court has granted Defendants' motion on 12(b)(6) grounds, it does not address Defendants' Sovereign Immunity argument.

*Retaliation*

Plaintiff alleges that Defendants treated her with hostility, denied her an equal opportunity to complete her coursework, and referred her to a disciplinary board (SBCT) without providing an explanation. Plaintiff alleges that she then filed an administrative complaint with the NYSDHR, to which Defendants retaliated by lodging student misconduct charges against her.

First, Plaintiff has alleged she was engaged in a protected activity by filing a complaint with the NYSDHR. The Second Circuit in *Shah* observed that the plaintiff "engaged in protected activity by filing his February 1990 discrimination complaint with the New York State Division of Human Rights…and the Equal Employment Opportunity Commissio…." *Shah*, 341 Fed. Appx. at 673 (2d Cir. 2009). Here, as in *Shah*, the protected activity was the filing of a discrimination complaint with a New York state organization: the NYSDHR. Second, Brockport was aware of this activity since Plaintiff notified them that she was going to file the NYSDHR complaint. Third, Brockport allegedly took adverse action by filing student misconduct charges against Plaintiff after Plaintiff filed the NYSDHR complaint, creating a temporal proximity supporting Plaintiff's allegation of retaliation. Finally, there is an alleged causal connection between the filing of the misconduct charges by Brockport and Plaintiff's NYSDHR complaint in that Brockport used the misconduct charges as a "rebuttal to [Plaintiff's] administrative complaint." Compl.

¶ 66.

Therefore, because Plaintiff has factually alleged all of the elements of a prima facie claim, under the 12(b)(6) standard, Plaintiff has stated a plausible claim upon which relief can be granted. Accordingly, the motion to dismiss the third cause of action is denied.

***New York State Human Rights Law***

Plaintiff alleges that Brockport's discrimination against her violates the New York State Human Rights Law. This claim fails for lack of subject matter jurisdiction under the election of remedies doctrine.

As stated above, Plaintiff had the choice to file a complaint with an administrative agency or with the judicial system, but could not pursue both. *Wiercinski*, 2010 U.S. Dist. LEXIS 66498, *6. Here, Plaintiff filed the complaint with the NYSDHR, a state administrative agency. Since Plaintiff chose to pursue that course of action, the later claim under the New York Human Rights Law cannot be brought in the judicial system. The outcome is the same regardless of whether the same defendants were listed in both complaints. As the court in W*ong v. Sunnex, Inc.*, 11 Misc. 3d 1082(A), 2006 WL 1029712 at *3) (citations omitted) noted: "The fact that [an individual defendant] was not named as a party defendant in the administrative complaint does not change this result, because the present claims are based on the same facts as the claims raised in the administrative proceeding…." S*ee Wiercinski*, 2010 U.S. Dist. LEXIS 66498 at *8 (citing *Wong* for this proposition). Therefore, because Plaintiff first used the state administrative process to bring this human rights claim, the Court now does not have subject mat-

ter jurisdiction over the claim. Accordingly, the motion to dismiss the fourth cause of action is granted.

Even if the court had subject matter jurisdiction, Plaintiff failed to demonstrate a prima facie case of discrimination in that she has not alleged that she has a disability that impairs one or more major life activities, a necessary element.[8] *Sogg*, at 155-56. Therefore, the Human Rights Law Claim does not meet the 12(b)(6) standard in that it fails to state a claim upon which relief can be granted. Accordingly, the motion to dismiss the fourth cause of action would have been granted even if the Court had subject matter jurisdiction.

***First Amendment***

Plaintiff alleges that Brockport violated her First Amendment right to free speech, applicable to New York through the Fourteenth Amendment, by censuring Plaintiff for her publication of a weblog. First, Plaintiff has alleged protected free speech through her blog posts. The United States Supreme Court, in *Tinker v. Des Moines*, 393 U.S. 503 (1969) held that public school speech or expression that does not "materially or substantially interfere with schoolwork or discipline" is constitutionally protected speech. *Tinker*, 393 U.S. at 511–13. Here, Plaintiff alleged that she wrote about how Fisher dealt with students and that Brockport was not materially or substantially interfered with in terms of schoolwork or discipline. Second, Plaintiff has alleged that Brockport took adverse action against her by treating her with hostility, denying her an equal opportunity to complete her coursework, referring her to a disciplinary board without providing an explanation, and by initiating a disciplinary proceeding against her. Compl.

---

[8] See Analysis Subheading, "Americans with Disability Act; Retaliation."

¶ 30.

However, Plaintiff has not alleged that the adverse actions mentioned above were caused by what she wrote on her blog about Fisher. Plaintiff even concedes that she chose to save the blog to a file and "deleted it from the [W]ord[P]ress URL." Compl. ¶ 30. In other words, Plaintiff does not allege that Brockport treated her with hostility, denied her the opportunity to complete her coursework, referred her to the SBCT, and initiated disciplinary proceedings against her *because* of her blog posts. In sum, Plaintiff does not allege plausible facts to establish a causal connection between the adverse action, or "censure," and her blog posts.

Therefore, the First Amendment claim does not meet the 12(b)(6) standard in that it fails to state a claim upon which relief can be granted. Accordingly, the motion to dismiss the fifth cause of action is granted.

***Procedural Due Process***

Plaintiff alleges that she was denied an opportunity to defend the disciplinary charges and penalized for not participating in the SBCT process, violating her right to procedural due process.

Plaintiff must first allege a property or liberty interest protected by the Constitution. *Narumanchi*, 850 F.2d at 72. To allege a property interest, Plaintiff must show a "legitimate claim of entitlement" to a benefit provided by law in the appropriate jurisdiction, as opposed to "an abstract need or desire for it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Property interests "extend well beyond actual ownership of real estate, chattels, or money." *Id.* at 571. Here, Plaintiff alleges that she

was entitled to the procedures set forth in SUNY Brockport's college policies with regard to how handle disruptive events and disruptive students. Compl. ¶ 69. As a student who is being subjected to state university policies, Plaintiff has a legitimate claim of entitlement to the proper application of those policies to her.

Having established a property deprivation, Plaintiff must then show that she was deprived of that interest without due process. "[T]to succeed on a claim of procedural due process deprivation—that is, a lack of notice and opportunity to be heard—a plaintiff must establish that state action deprived him of a protected property interest." *Sanitation and Recycling Industry, Inc. v. City of New York*, 107 F.3d 985, 995 (2d Cir. 1997). Here, Plaintiff alleges that she was not given notice of the charges before the SBCT despite multiple requests, and that she was therefore not given a chance to be heard on the matter. Her complaint, however, does show that she was given notice of the hearing and the basis for it: "that Plaintiff was reported as a 'Student of Concern.'" Compl. ¶ 49. Plaintiff also had the opportunity to be heard, but elected not to participate in the process because of an undefined disability that she claims prevented her from appearing at the on-campus hearing. Her complaint states that she "did not feel safe to return to school or to have a meeting *without knowing what was behind the referral*." Compl. ¶ 50 (emphasis added). From these facts, her sixth cause of action alleges that she was "denied…an opportunity to participate in the SBCT process *in a manner that was meaningful* in light of her disabilities." Compl. ¶ 86. The Court finds that Plaintiff's allegations do not meet the requirements of pleading a plausible claim that she was deprived of due process.

### *Procedural Due Process, Defamation Stigma Plus*

Finally, Plaintiff alleges she was denied her procedural due process rights under the defamation plus standard in that the series of events with Brockport and the staff adversely affected her reputation. In order to assert a plausible claim, Plaintiff must allege the defamatory statement and plus factor as follows:

> The defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest. Similarly, because a freestanding defamatory statement is not a constitutional deprivation, but is instead properly viewed as a state tort of defamation, the 'plus' imposed by the defendant must be a specific and adverse action clearly restricting the plaintiff's liberty—for example, the loss of employment, or the termination or alteration of some other legal right or status. In a typical 'stigma-plus' case, the stigmatizing statement originates from the same state actor who imposes the 'plus,' such as when a government employer defames an employee in the course of terminating that employee.

*Velez*, 401 F.3d at 87–88 (citations and internal quotation marks omitted).

Here, while Plaintiff alleges that Fisher mentioned Plaintiff adversely to her classroom, deeming the statement sufficiently public and injurious, Plaintiff does not allege the "plus" factor. Specifically, she does not allege a specific and adverse action taken based on the statements by Fisher. While Plaintiff alleges that her schoolwork suffered because she did not want to return to school, she concedes that it was her choice to not return to school. In other words, Brockport did not impose any additional burden on top of the allegedly injurious statements by defendant Fisher.

Therefore, because Plaintiff does not sufficiently allege the requirements of a defamation stigma plus claim, she does not meet the 12(b)(6) standard. Accordingly, the motion to dismiss the seventh cause of action is granted.

## CONCLUSION

Defendants' motion to dismiss, filed on October 5, 2011, [ECF No. 10](ECF No. 10), is granted in part and denied in part. Defendants are granted dismissal of all but the third cause of action alleging retaliation.

Dated: December 17, 2013
       Rochester, New York

ENTER:

<u>/s/ Charles J. Siragusa</u>
CHARLES J. SIRAGUSA
United States District Judge