UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA BONNEAU                                                    Dkt. no.
                                                                11 cv 6273 (CJS)
      Plaintiff

      v.

STATE UNIVERSITY OF NEW YORK AT BROCKPORT,
PROF. DEBRA FISHER, PROF. MELISSA BROWN,
PROF. PHYLLIS KLODA, KAREN LOGSDON, and
ASSISTANT DEAN VIRGINIA BACHELER, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES,
      Defendants
_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RECONSIDERATION**

Aaron David Frishberg
Attorney for Plaintiff
116 W. 111th Street
New York, NY 10026
212 740 4544

STATEMENT OF FACTS

Plaintiff brought this suit alleging, *inter alia,* disability discrimination under the Americans with Disabilities Act and the Rehabilitation Act by SUNY-Brockport.  Plaintiff alleged in the Complaint that she had notified the SUNY-Brockport Office of Students with Disabilities that she was disabled, providing medical documentation, and requested accommodations( (Dkt. No. 1, ¶ 9), and that she requested and received the accommodations of additional test time, permission to take short breaks during classes, and assistance with getting notes missed during the breaks. (*id.,* ¶ 10). The complaint further states that she disclosed to Prof. Debra Fisher that the nature of the disability was post-traumatic stress disorder, (*id*., ¶ 13).

The complaint further alleges that Professor Fisher, by reading Plaintiff's weblog, learned further about her disability that Plaintiff's mental health history included childhood traumas and traumatic, disabling experiences with psychiatry. (*id.*, ¶ 18).

The complaint further alleges that in a meeting on February 2, 2010, Prof. Phyllis Kloda questioned Plaintiff about her disability and her treatment choices (*id.*, ¶ 43), and threatened Plaintiff that if Plaintiff refused to drop Printmaking and take something else, Kloda would refer her to the Student Behavioral Consultant Team, (SBCT). (*Id*., 46).  Two days later, Kloda referred Plainitff to the SBCT specifically stating Kloda's concern that Plaintiff was in therapy but not medicated. (*Id.*, ¶ 48). The complaint states that Plaintiff's fear of what was behind the referral was the 2008 harassment by Defendant Fisher and the harassment by Defendant Kloda, in which Defendant Fisher's harassment clearly played a role due to the questions and threats in 2010.   (*Id.*, ¶ 51).

1

The complaint goes on to allege that when Plaintiff requested that, as reasonable accommodations of her disability, the meeting with the Student Behavioral Consultant Team take place with her therapist present, and at a location other than the health center counseling office, these accommodations were refused. (*Id.*, ¶ 53).

The complaint further states that on March 9, 2010, Fisher sent an e-mail to Kloda and Virginia Bacheler which repeated a statement allegedly made by a student that Plaintiff was "crazy" and might go after Fisher with a gun, and called Plaintiff a "ticking time bomb", and stated that Plaintiff needed to be kept off campus and out of her classroom. (*Id.*, ¶ 56).

The complaint further recounts that when Plaintiff went to the Art Department building on March 11, 2010, Fisher closed the door to her class room, and began to discuss Plaintiff with the students in her class, implying that Plaintiff's presence was a threat to safety, resulting in one student suggesting that Fisher call the armed campus police. The complaint goes on to explain that after Plaintiff contacted Bacheler about this, and Bacheler did nothing, Plaintiff could not feel safe returning to her classes after that incident. (*Id.*, ¶¶ 60-61).

LEGAL ARGUMENT

Point I   PLAINTIFF'S COMPLAINT STATES CLAIMS FOR DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT, AS AMENDED.

This Court, in determining that Plaintiff had not stated a cause of action under the Americans with Disabilities Act, or under the Rehabilitation Act, held that Plaintiff had not met the requirement of showing a disability which "substantially limits one or more of a plaintiff's major life activities," quoting *Wernick* v. *Federal Reserve Bank of New York,* 91 F. 3d 379, 383 (2d. Cir. 1996).  However, as discussed above, some of the events complained of, in particular, with regard to the request for an accommodation in regard to the Student Behavioral Consultant Team meeting, took place in 2010.  The amendments to the Americans with Disabilities Act enacted as the Americans with Disabilities Act Amendment Act of 2008, which had an effective date of January 1, 2009, thus apply to the pleading with respect to these acts.

In Section 2 of the Americans with Disabilities Amendments Act, "FINDINGS AND PURPOSES" among the Purposes stated, is (b) (5) "that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether the entities covered by the ADA have complied with their obligations, and to convey that the question of whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."

Section 4 of the ADAAA, " RULES OF CONSTRUCTION" provides that "(A) the

3

definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act"

and "(B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

The FINDINGS AND PURPOSES of the ADAAA, subsection (b), includes

"(4) to reject the standards enunciated by the Supreme Court in Toyota Motor Manufacturing Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) that the terms 'substantially' and 'major' in the definition of disability 'need to be interpreted strictly to create a demanding standard for qualifying as disabled."

ADAAA Section 3, DEFINITION OF DISABILITY, added to (2) MAJOR LIFE ACTIVITIES, a new subsection B, MAJOR BODILY FUNCTIONS

"For purposes of paragraph 1 [defining disability as a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment], a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."

One commentator on the ADA Amendments Act, in discussing examples of how individuals who are substantially limited in the operation of various major bodily functions qualify under the ADA as amended states:

"An individual with post-traumatic stress disorder should qualify as disabled.  A court must

4

determine whether post-traumatic stress disorder substantially limits a major life function without regard to the ameliorative effects of medication or therapy.  When considered without the effects of medication or therapy, PTSD substantially limits the brain function. (PTSD also limits the major life activities of concentrating and interacting with others, but a person need only show substantial limitation in one major bodily function or major life activity."  Benfer, Emily A., :"The ADA Amendments Act: An Overview of Recent Changes to the Americans with Disabilities Act", p. 11, Sept. 2009, available at:

http://www.law.georgetown.edu/archiveada/documents/BenferADAAA.pdf

The EEOC, in its Interpretive Guidance to the ADAAA also lists post-traumatic stress disorder among the impairments which substantially limit brain function.  29 CFR § 1630.2 (j) (3) (iii).

Because Plaintiff's complaint identifies her disability as post-traumatic stress disorder, (Dkt. No. 1, Complaint, *supra*, ¶ 13), it is respectfully submitted that under the ADAAA, Plaintiff's complaint states a cause of action as to events occurring after January 1, 2009, including the events with respect to the SBCT and the failure to reasonably accommodate her disability in 2010.  Plaintiff's pleading includes the facts that her mental health history included "traumatic disabling experiences with psychiatry." It is plausible that, after her therapy choices were questioned, and a referral to the SBCT was made which specifically mentioned her not being on medications, her requests for a meeting elsewhere than the campus health center counseling office, with her therapist present, constituted  reasonable accommodations.

Sec. 7 , CONFORMING AMENDMENTS, of the ADAAA amended the definition of

"major life activities" in the Rehabilitation Act to conform to the meaning given to it in the Americans with Disabilities Act, as amended. Therefore, Plaintiff's Complaint also states a cause of action under the Rehabilitation Act, at least for acts after the effective date of January 1, 2009.

Sec. 4, DISABILITY DEFINED AND RULES OF CONSTRUCTION of the ADAAA amended Sec. 3 of the definition of disability, "REGARDED AS HAVING SUCH AN IMPAIRMENT" to state that an "individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*."  (Emphasis supplied.)

Certainly, Fisher's characterization of Plaintiff as "crazy", and "a ticking time bomb", and arguing that Plaintiff be kept off campus and out of her class room, followed by treating Plaintiff as so threatening that it was necessary not only to close her class room door but to consider calling the armed campus police, leading Plaintiff to feel it was not safe for her to return to campus, would constitute a perception of a mental impairment, under the definition in the ADAAA.  Plaintiff alleges that this mistreatment, along with the refusal to accommodate her with regard to the SBCT meeting, made it impossible for her to return to the campus and her studies.  The creation of a hostile environment in which Plaintiff could not feel safe on the campus because of the perception of her as "crazy", and a "ticking time bomb" deprived Plaintiff of the opportunity to complete her studies, in violation of the ADA.

6

Point II   IN THE ALTERNATIVE, THIS COURT SHOULD GRANT PLAINTIFF
LEAVE TO AMEND THE COMPLAINT TO FURTHER DESCRIBE HER
DISABILITY

Under F.R. Civ. P. Rule 15 (a) (2), a court should freely grant leave to amend the

complaint when justice so requires.  In the case at bar, Plaintiff seeks, in the alternative,

to amend the complaint to fully describe her disabilities, and how they affected her with

regard to the performance of major life activities.

Insofar as Plaintiff's proposed amended complaint amplifies the partial account of

her disability in the original complaint, and therefore states a cause of action, it is

respectfully submitted that justice requires the grant of leave for her to amend the

complaint.  It is respectfully submitted that the proposed amended complaint states

causes of action for disability discrimination, at least with respect to events occurring after

the January 1, 2009 effective date of the Americans with Disabilities Act Amendments

Act of 2008.

7

CONCLUSION

It is submitted that Plaintiff's complaint, as filed, states claims for disability discrimination under the Americans with Disabilities Act as amended, by setting out discrimination against her based upon post-traumatic stress disorder, which constitutes an impairment of a major body system, the brain, and based upon her being regarded as a person with a mental disability.

In the alternative, Plaintiff should be permitted to amend the complaint to show how her mental conditions were disabling, impairing her in the performance of major life functions.

Respectfully submitted,

/s/

Aaron David Frishberg
Attorney for Plaintiff

.

8